# Case No. 16-1089

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT COURT

### APPELLANT
### JOSEPH PHELPS VINEYARDS LLC

### v.

### APPELLEE
### FAIRMONT HOLDINGS, INC.

### APPEAL FROM THE
### UNITED STATES PATENT AND TRADEMARK OFFICE
### TRADEMARK TRIAL AND APPEAL BOARD
### CANCELLATION NO. 92057240

### INITIAL BRIEF OF APPELLEE, FAIRMONT HOLDINGS, INC.
### (Non-Confidential)

Submitted by:   KIMBERLY KOLBACK
Law Offices Of Kimberly Kolback

Attorney for Appellee
1395 Brickell Avenue, Suite 800
Miami, FL  33131
Telephone:  (305) 858-2627
Email:  kim@kkolbacklaw.com                    Date: January 8, 2016

with:

Miriam Richter
Miriam Richter, Attorney at Law, P.L.
2312 Wilton Drive, Suite 9
Wilton Manors, FL  33305
Telephone:  954-977-4711
Email:  mrichter@RichterTrademarks.com

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.      STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV.     STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

V.      STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

VI.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VII.    SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VIII.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      The TTAB's Ruling Under The Fifth Dupont Factor Regarding
                Phelps' Fame Was Correct And Should Be Sustained . . . . . . . . . . . . . . . . . . . . 8

                1) Appellee's Evidence Was Insufficient To Support A Finding Of Fame . . . . . 9

                2) The TTAB Applied The Correct Likelihood Of Confusion Standard To This
                Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      The TTAB Accurately Compared the Parties' Marks Under The First Dupont
                Factor And Its Findings Should Be Sustained . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                1) The TTAB Properly Considered The Appearance, Sound, Connotation and
                Commercial Impression Of The Marks In Their Entireties . . . . . . . . . . . . . . . . 13

                2) Appellant's Allegations Relating To Appellee's Earlier Filed Application(s)
                Neither Pertinent To This Proceeding, Nor Convincing . . . . . . . . . . . . . . . . . . 17

                3) No Finding On A "Scale Of Similarity" Was Necessary . . . . . . . . . . . . . . . . 18

        C.      The TTAB's Ruling That The Parties' Goods Are Not Similar Or Related In
                A Way That Would Create A Likelihood Of Confusion Under The Second
                DuPont Factor Should Be Sustained . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1)  The Evidence Presented Did Not Support aA Finding That The Parties' Goods Are Similar Or Related In A Way That The Consuming Public Would Be Confused As To The Origin Of The Goods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

2)  No Per Se Rule Was Intended Or Asserted By The TTAB . . . . . . . . . . . . . . 22

D.    The TTAB Ruling Pursuant To The Eleventh DuPont Factor Regarding Appellant's Limited Policing Efforts Was Correct And Should Be Sustained . . 23

E.    The TTAB's Ruling On Likelihood Of Confusion Under *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (CCPA 1973) Was Correct And Should Be Upheld . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

IX.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF FILING AND SERVICE

Form 9

**FORM 9. Certificate of Interest**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

JOSEPH PHELPS VINEYARDS, ▪   **v.**   FAIRMONT HOLDINGS, INC.

Case No.   16-1089

Corrected

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Appellee, Fairmont Holdings, ▪ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.   The full name of every party or amicus represented by me is:

Appellee, Fairmont Holdings, Inc.

2.   The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is:

Appellee, Fairmont Holdings, Inc.

3.   All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below. (Please list each party or amicus curiae represented with the parent or publicly held company that owns 10 percent or more so they are distinguished separately.)

4. ☐   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

| | |
|---|---|
| November 18, 2015 | /s/Kimberly Kolback/ |
| Date | Signature of counsel |

Please Note: All questions must be answered

cc:   Thomas Schneck

Kimberly Kolback
Printed name of counsel

Reset Fields

## CERTIFICATE OF FILING AND SERVICE

I HEREBY CERTIFY that on this 18th day of November, 2015, the attached document was electronically served with the Clerk Of The Court for THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT using the CM/ECF System, with a copy served by U.S. mail and email to:

Counsel for Appellant
Thomas Schneck
Schneck & Schneck
P.O. Box 2-E
San Jose, CA 95109
tschneck@patentvalley.com

Respectfully submitted,

Counsel for Appellee
Kim Kolback
Law Offices Of Kimberly Kolback
1395 Brickell Avenue, Suite 800
Miami, FL 33131
Telephone: 305-858-2627
Email: kim@kkolbacklaw.com

By: /s/Kim Kolback/
KIMBERLY KOLBACK

# TABLE OF AUTHORITIES

**CASES:**

*Bose Corp. v. QSC Audio Products, Inc.,* 293 F.3d 1367 (Fed. Cir. 2002) . . . . . . . . . . 5, 8, 10, 11

*Century 21 Real Estate Corp. v. Century Life of America,*
10 USPQ2d 2034 (TTAB 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Citigroup Inc. v. Capital City Bank Group Inc.,* 637 F3d 1344 (Fed. Cir. 2011) . . . . . . . 6, 16, 17

*Coach Services Inc. v. Triumph Learning LLC*, 668 F3d 1356 (Fed. Cir. 2012) . . . . . . . . . 7, 19

*Duca di Salaparuta S.p.A v. Corvus Cellars LLC,*
Opposition No. 91191848 decided June 26, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

*Duopross Meditech v. Inviro Medical Devices,* 695 F.3d 1247 (Fed. Cir., 2012) . . . . . . . . . 4, 26

*Guild Inc. v. L&CW Holdings, LLC,* 82 USPQ2d 1901 (TTAB 2007) . . . . . . . . . . . . . . . . . . . . 8

*Hard Rock Café Licensing Corp. v. Elsea,* 48 USPQ2d 1400 (TTAB 1998) . . . . . . . . . . . 10, 11

*Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261 (Fed. Cir. 2002) . . . . . . . . . . . . . . 19

*In re Avent, Inc.,* 195 USPQ 185 (TTAB 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Coors Brewing Co.*, 343 F.3d 1340 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

*In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341 (Fed. Cir., 2001) . . . . . . . . . . . . . . . . 15

*In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973) . . . . . . . . . . . . . . . . . . 1, 10

*In re Fiesta Palms LLC,* 85 USPQ2d 1360 (TTAB 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*In re Licores Veracruz, S.A. de C.V.*, unpublished (TTAB 2012) . . . . . . . . . . . . . . . . . . . . . . 21

*In re National Data Corp.*, 753 F.2d 1056 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Opus One, Inc.*, 60 USPQ2d 1812 (TTAB 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Shell Oil Co.,* 992 F.2d 1204 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Vienna Sausage Mfg. Co.*, 230 USPQ 799 (TTAB 1986) . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re White Rock Distilleries Inc.,* 92 USPQ2d 1282 (TTAB 2009) . . . . . . . . . . . . . . . . . . . . . 22

*John Walker & Sons Limited v. Tampa Cigar Company, Inc.*. 124 F.Supp. 254,
103 USPQ 21 (D.Fla. 1954), *aff'd* 222 F.2d 460, 105 USPQ 351 (CAS 1955) . . . . . . . . . . . . . . 21

*Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*,
396 F.3d 1369 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 12, 13, 21

*Polo Fashions, Inc. v. LaLoren*, 224 USPQ 509 (TTAB 1984)  . . . . . . . . . . . . . . . . . . . . . 13, 21

*Shen Mfg. Co. Inc. v. Ritz Hotel, Ltd.,* 393 F.3d 1238 (Fed. Cir. 2004)  . . . . . . . . . . . . . . . . 7, 21

*Singleton v. Wulff*, 428 U.S. 106 (1976)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Ford Motor Co.*, 463 F.3d 1267 (Fed. Cir. 2006)  . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES:

Administrative Procedure Act, 5 U.S.C. 706(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 26

## OTHER AUTHORITY:

TBMP §801.03  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

TMEP §712  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TMEP §807.03(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TMEP §807.12(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

TMEP §1207.01  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

## I.     STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee states as follows: (1) Appellee, Fairmont Holdings, Inc. ("Fairmont") is not aware of any other appeals in this case; and, (2) Fairmont is not aware of any other cases that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II.     STATEMENT OF JURISDICTION

Appellee adopts and incorporates herein, Appellant's Statement Of Jurisdiction.

## III.     STATEMENT OF THE ISSUES

Whether the United States Trademark Trial And Appeal Board ("TTAB"), taking all of the relevant factors enumerated in *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973) ("*DuPont* factors"), correctly ruled that there was no likelihood of confusion between Fairmont's ALEC BRADLEY STAR INSIGNIA mark  in international class 034 for cigars and cigar related goods and JOSEPH PHELPS VINEYARDS LLC's ("Phelps") mark INSIGNIA in international class 033 for wine.

## IV. STATEMENT OF THE CASE

On May 17, 2013, Phelps filed cancellation petition no. 92057240 [A. 229-241] with the United States Patent And Trademark Office ("USPTO") against Fairmont's ALEC BRADLEY STAR INSIGNIA registration in international class 034 for cigars and cigar related goods on the grounds that ALEC BRADLEY STAR INSIGNIA is likely to be confused with Phelps' INSIGNIA mark in international class 033 for wine. On July 6, 2015 the USPTO denied Phelps' cancellation petition, finding no likelihood of confusion between ALEC BRADLEY STAR INSIGNIA and INSIGNIA. [A. 1-17.] Phelps filed a Notice Of Appeal and the USPTO certified the record on

October 19, 2015. [A. 18.]

## V. STATEMENT OF THE FACTS

Alec Bradley Cigar Distributor's, Inc. ("Alec Bradley") is a highly reputable manufacturer, producer, seller and distributer of quality cigars and cigar related products. [A. 107, ¶ 4.] Alec Bradley has been operating its cigar business for over 18 years, since 1996. [A. 107, ¶ 4.] Appellee, Fairmont, is the holding company for the Alec Bradley trademarks. [A. 107, ¶¶ 3-5.] Fairmont, on behalf of Alec Bradley, is the owner of at least 100 trademarks, of which many trademarks include the ALEC BRADLEY® house mark. [A. 107, ¶ 5 and 111-113.]

Initially, on July 2, 2010, Fairmont filed Application Serial No. 85/077386 ("No. '386") for the trademark INSIGNIA for cigars, tobacco, cigar boxes, cigar cutters and cigar tubes. [A. 107-8, 7-11.] Even though this first application included the word INSIGNIA, the USPTO did not cite Appellant, Phelps' trademark registration for INSIGNIA for wine as likely to cause confusion under Section 2(d) of the Lanham Act in relation to No. '386. No. '386 was approved for publication on September 8, 2010. [A. 107-8, 7-11.] And even though this application was for the identical trademark at issue in this proceeding, namely INSIGNIA for wine, Phelps did not object to or oppose Fairmont's No. '386 for cigars and cigar related goods. [A. 107-8, 7-11.] However, pursuant to an agreement with an unrelated third party, Fairmont abandoned its first application for INSIGNIA.[1] [A. 107-8, ¶7-11.]

---

[1]Opposition No. 91197552 was instituted against No. '386 by Tony Borhani on November 24, 2010. Tony Borhani was the owner of the common law trademark INSIGNIAS for cigars. The parties entered into a confidential settlement agreement whereby the parties agreed that, in order to avoid any potential for confusion, Fairmont would abandon its application for INSIGNIA for cigars and would re-file for STAR INSIGNIA for cigars. Pursuant to this agreement, Opposition No. 91197552 was dismissed on July 9, 2012. [A. 107-8, ¶¶ 7-11.]

Then on September 21, 2011, Fairmont filed a second Application Serial No. 85/427940

("No. '940") for STAR INSIGNIA for cigars, tobacco, cigar boxes, cigar cutters and cigar tubes.

[A. 108, ¶¶ 12-16, 37.]  On January 9, 2012, the USPTO issued an Office Action against No. '940

because of a likelihood of confusion with three trademarks[2], none of which were Phelps' mark.

Again, the USPTO did not cite Phelps' trademark INSIGNIA for wine as likely to cause confusion

under Section 2(d) of the Lanham Act in relation to No. '940 for STAR INSIGNIA for cigars.  [A.

108, ¶¶ 12-16, 37.]  Nor, did Phelps notify Fairmont of any objection to No. '940 for STAR

INSIGNIA for cigars.  However, because of the pending Office Action citing the unrelated third

party trademarks and Fairmont's desire to avoid any potential for confusion with these unrelated

international class 033 third parties, Fairmont decided to abandon No '940 on August 29, 2012 and

re-file it application with its house mark, ALEC BRADLEY®.  [A. 108, ¶¶ 12-16, 37.]

So, on February 16, 2012, Fairmont filed new Application Serial No. 85/544573 (hereafter

"No. '573") for ALEC BRADLEY STAR INSIGNIA for cigars, tobacco, cigar boxes, cigar cutters

and cigar tubes.  [A. 108-9, ¶¶ 17-21 and Appx. 21.]  Not surprising, the USPTO did not cite

Appellee Phelps' registered trademark for INSIGNIA for wine as a bar to the ALEC BRADLEY

_____

[2]The three unrelated trademarks cited were: 1) U.S. Registration No. 3816044 owned by Wenzhou Star Smoking Set Co., Ltd in international class 034 for the mark STAR for lighters for smokers, cigarette filters, cigarette tips, tobacco pipes, flints for lighters, gas containers for cigar lighters, cigarette cases, not of precious metal and ashtrays, not of precious metal; 2) U.S. Registration No. 3816045 owned by Wenzhou Star Smoking Set Co., Ltd in international class 034 for the mark STAR (with design) for lighters for smokers, cigarette filters, cigarette tips, tobacco pipes, flints for lighters, gas containers for cigar lighters, cigarette cases, not of precious metal and ashtrays, not of precious metal; and, 3) the recently filed Application Serial No. 85182548 for INSIGNIAS owned by Tony Borhani in international class 034 for the mark INSIGNIAS for cigars.  [A. 108.]

STAR INSIGNIA No. '573 application for cigars and cigar products as likely to cause confusion under Section 2(d) of the Lanham Act. [A. 108-9, ¶¶ 17-21 and Appx. 21.] Application No. '573 was published for opposition on July 10, 2012. Once again, Phelps never notified Fairmont of any objection to or opposed No. '573. On September 25, 2012, ALEC BRADLEY STAR INSIGNIA was issued registration No. 4213619. [A. 108-9, ¶¶ 17-21 and Appx. 21.]

From its first use, as early as December 2010, Fairmont has always used the words ALEC BRADLEY and STAR in conjunction with and in close proximity to the word INSIGNIA. [A. 109, ¶¶ 22, 25.] Throughout this period, Fairmont, through a single licensee, has used and promoted its mark with no indication that Phelps was concerned about confusion in the market place as to the origin of Fairmont's ALEC BRADLEY STAR INSIGNIA goods. Nor was there ever any indication of confusion in the market place. [A. 107, ¶¶ 7-22, 24, 36, Appx. 260, Appx. 301, ¶ 2 and Appx. 303-305 (Phelps' Response to Fairmont's First Request For Admissions No. 7).]

Goods displaying the ALEC BRADLEY STAR INSIGNIA mark are sold *exclusively*, on-line, *only* by one licensee – New Global Marketing, Inc., and *only* at www.Bestcigarprices.com – and no where else. [A. 109, ¶ 24.] ALEC BRADLEY STAR INSIGNIA is advertised only on the sole distributor's website and in its cigar sales catalogue mailed to existing customers. [A. 109-10, ¶¶ 24, 41.] ALEC BRADLEY STAR INSIGNIA is not advertised or sold in Wine Spectator or any other wine or cigar magazines or catalogues. [A. 110, ¶ 41.]

The ALEC BRADLEY STAR INSIGNIA trademark has never been used on wines or any wine or beverage related products. [A. 110, ¶ 39.]

## VI.     STANDARD OF REVIEW

This Court reviews TTAB factual findings with the deference mandated by the

Administrative Procedure Act, 5 U.S.C. 706(2). Findings must be supported by competent evidence in the record which supports the TTAB's ruling. *Duopross Meditech v. Inviro Medical Devices*, 695 F.3d 1247 (Fed. Cir. 2012). Conclusions of law are reviewed *de novo. Id.*

## VII.   SUMMARY OF ARGUMENT

In its Brief, Appellant's principal arguments allege that the TTAB erred in its ruling related to the fifth, first, second and eleventh *DuPont* factors. For clarity, Appellee reviews the accuracy of the rulings in the order raised by the Appellant. (Appellee also asserts at footnote 17 that the TTAB ruling related to the similarity or dissimilarity of established and likely-to-continue trade channels under the third *DuPont* factor was error, and requests this Court review and reverse this ruling).

As its first argument, Appellant claims that the TTAB erred when it did not find its INSIGNIA mark famous under the fifth *Dupont* factor. The TTAB's ruling was proper. Fame is generally measured by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident. *Bose Corp.,* 293 F.3d 1367, 1375 (Fed. Cir. 2001). Phelps has used INSIGNIA on wine since 1978 and has priority. However, Phelps failed to present satisfactory evidence related to its volume of sales or, ***any*** evidence as to its advertising expenditures.

Appellant further argues that the TTAB incorrectly applied the "fame" standard for a dilution case under the Federal Trademark Dilution Act, rather than a "strength" analysis for the purposes of this likelihood of confusion case. In its opinion, the TTAB found: "***Fame for confusion purposes*** arises as long as a significant portion of the relevant consuming public . . . recognizes the mark as a source indicator. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsatdin Maison Fondee En 1772,* 396

-5-

F3d 1369 (Fed. Cir. 2005)." The TTAB, relying on *Palm Bay*, specifically noted that *"[f]ame for confusion purposes"* was the standard applied.

As its second argument, Appellant alleges that the TTAB improperly compared the appearance, sound, connotation and commercial impression of the parties' marks under the first *DuPont* factor. The TTAB found that Appellee's mark consists of its house mark, ALEC BRADLEY, and the unitary term STAR INSIGNIA. The TTAB's ruling is well-grounded in fact and law. Citing *In re Fiesta Palms LLC,* 85 USPQ2d 1360, 1364 (TTAB 2007), the TTAB concluded that where "… there are recognizable differences in the product marks, STAR INSIGNIA and INSIGNIA, the house mark ALEC BRADLEY does distinguish the marks. As for the unitary phrase STAR INSIGNIA, the TTAB found that the word "star" modifies "insignia." And, "insignia" is defined as:

> 1: a badge of authority or honor;
>
> 2: a distinguishing mark or sign.

> Thus, the commercial impression of INSIGNIA is an "insignia" or mark, and the commercial impression of Applicant's mark ALEC BRADLEY STAR INSIGNIA is one of a star shaped mark or sign identifying the source of a product produced by ALEC BRADLEY.

Appellant next claims that the TTAB erred because it failed to recognize that INSIGNIA is the dominant word in Appellee's ALEC BRADLEY STAR INSIGNIA mark because it is sometimes larger than the other words in various stylistic uses of the mark. The TTAB ruled that the fact that the word INSIGNIA is sometimes larger is not at issue because the registration is for ALEC BRADLEY STAR INSIGNIA in standard character format. "Registrations in standard character format are 'federal mark registrations that make no claim to any particular font style, color, or size of display and, thus, are not limited to any particular presentation.' *Citigroup Inc. v. Capital City*

*Bank Group Inc.,* 637 F3d 1344, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011)." Accordingly, the law supports this TTAB ruling.

For its third argument, Appellant claims that the TTAB incorrectly found pursuant to the second *DuPont* factor that the parties' goods are not similar or related in a way that would create likelihood of confusion. In its opinion, the TTAB recognized that, when examining the similarity of the goods, "... likelihood of confusion can be found 'if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source.' *Coach Services Inc. v. Triumph Learning LLC*, 668 F3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012)." Then, after summarizing the evidence introduced by Appellant, the TTAB found that the evidence suggests that cigars and wine can be used together. However, it found that "used together" is not alone determinative to the entire underlying factual inquiry. *Shen Mfg. Co. v. Ritz Hotel Ltd.,* 393 F.3d 1238, 1244-45 (Fed. Cir. 2004) (finding no correlation because, aside from the fact that these goods are used together, there is no evidence that the consuming public would perceive them as originating from the same source). The TTAB then correctly ruled that:

> ... *the products differ in numerous ways, including the differences in the raw ingredients used to manufacture the products, the differences in the methods of manufacture and the negligible amount of evidence of use of the same mark on both cigars and wine.* In light of these differences, *and the minimal evidence of a single source of both goods,* we are not persuaded by Petitioner's arguments that the goods are related."

As a fourth argument, Appellant claims the TTAB's erred by failing to consider as evidence under the eleventh *DuPont* factor four oppositions cited by Appellant regarding Appellant's policing efforts in relation to its right to exclude others from using INSIGNIA on unrelated goods. In the TTAB opinion, at footnote 10, the TTAB stated:

-7-

Petitioner also argues that it has acquired exclusive rights by policing its mark. The evidence introduced consists of cease and desist letters sent to three companies in 2006 and 2007; and follow-up letters regarding one of the companies. Petitioner's reference to four oppositions is not supported by any evidence and hence is not further considered. Petitioner's cease and desist and follow up letters only reflect limited policing efforts.

The TTAB did not include the four oppositions cited because there was no evidence to support the oppositions. The Appellant merely listed the oppositions in the Testimony Of William H. Phelps' affidavit ("Phelps Affidavit"). No USPTO records or other documents were presented by Appellee to substantiate the Phelps's Affidavit statement. In light of the evidence presented, this ruling was proper and should be affirmed.

## VIII.   ARGUMENT

### A.   The TTAB's Ruling Under The Fifth *DuPont* Factor Regarding Phelps' Fame Was Correct And Should Be Sustained

Because the consequences of conferring fame on a product mark are significant, even possibly outcome-determinative in contests as to the likelihood of confusion, those who claim fame for product marks should be properly put to the tests to assure their entitlement to the benefits of fame for a product mark. *Bose Corp. v. QSC Audio Products, Inc., 293 F.3d 1367, 1371 (Fed. Cir. 2002); see generally, Guild Inc. v. L&CW Holdings, LLC,* 82 USPQ2d 1901, 1904 (TTAB 2007) ("It is the duty of a party asserting that its mark is famous to clearly prove it"); *Duca di Salaparuta S.p.A v. Corvus Cellars LLC,* Opposition No. 91191848 decided June 26, 2012[3] (because of the extreme deference accorded a famous mark, Corvo had the duty to prove that CORVO is a famous mark for wine). [A. 261-268, pp. 8-9.]

---

[3]Citation of non-precedent opinions of the TTAB are permitted pursuant to TBMP §801.03.

**1)    Appellee's Evidence Was Insufficient To Support A Finding Of Fame**

In relation to the Fifth *DuPont* factor – fame –  the TTAB stated that "[f]ame for confusion purposes arises as long as a significant portion of the relevant consuming public . . . recognizes the mark as a source indicator. *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d at 1369, 73 USPQ2d 1689, 1695 (Fed. Cir. 2005)."  [A. 6.]  To determine fame, the TTAB evaluated the following evidence:

-Phelps use of INSIGNIA on wine since 1978. [A. 25 ¶4.]

-Phelps' statement and evidence that "[since 2000, annual sales of wine bearing the INSIGNIA trademark have . . . ranged between 10,000 to 15,000 cases per year representing revenue between $13 million to $20 million per year."  [A. 25 ¶7.]

-Phelps sells its INSIGNIA wine through wine distributors (which sell to stores, restaurant, hotels, bars and other retailers), directly to house accounts that are mainly restaurants and bars, through a JBV Wine Club, through a company store at the Joseph Phelps' winery and on its website at www.josephphelps.com. [A. 26 ¶¶ 8-9.]

-news articles and awards – noting that two newspaper articles particularly relied on by Phelps, *were not about* INSIGNIA wine, but merely mentioned the wine, while focusing more on the winemaker of Bordeaux blends.  [A. 26 ¶¶ 14-15, Appx. 62-70 and Appx. 73-106.]

[A. 6-7.]

Based upon the Phelps' evidence presented in the case, the TTAB ruled that while ". . . Petitioner's INSIGNIA branded wine has met with *success in the marketplace*, we are not persuaded on this record that Petitioner's mark is famous."  [A. 8.]

Appellant claims the TTAB's ruling on fame was erroneous. It was not.

As the TTAB found, the evidence presented in the case was insufficient to carry Appellants duty to prove fame. Fame, in a likelihood of confusion context, is generally measured indirectly by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident.[4] *Bose Corp.,* 293 F.3d at 1375. While, raw numbers of product sales and advertising expenses may have sufficed in the past to prove fame of a mark, raw numbers alone in today's world may be misleading. *Id.* "Consequently, some context in which to place raw statistics is reasonable" such as "the substantiality of the sales or advertising figures for comparable types of products." *Id.* "A tiny percentage of the market share for the product or a small share of advertising revenues for the product market could undermine the weight given to the figures for assessment of fame." *Id; Hard Rock Café Licensing Corp. v. Elsea,* 48 USPQ2d 1400, 1407 (TTAB 1998) .

Appellee concedes that Phelps has used INSIGNIA on wine since 1978 and has priority. However, Phelps failed to present satisfactory evidence related to its volume of sales; and, failed to provide *any* evidence as to its advertising expenditures. In the Phelps Affidavit, Phelps provided an annual "estimate" of volume and sales figures that were broad, imprecise evaluations for a 14 year period.[5] [A. 25.] These figures were not verified with *any* supporting calculations, reports or documents, nor any evidence related to sales of comparable types of products, namely wine sales.

---

[4] The *E.I. du Pont,* 476 F.2d at 1361 case also parenthetically lists the three factors for fame as: "sales, advertising and length of use." [*See also* Appellant's Br. p. 4.]

[5] "Since 2000 annual U.S. sales of wine bearing the INSIGNIA trademark have ranged between 10,000 to 15,000 cases per year representing revenue between $13 million to $20 million per year." [A. 25.]

In fact, the broad generic figures did not establish any growth in sales over the years to support its

claim that the wine has become famous. Even in its totality, this evidence falls woefully short of

demonstrating the necessary widespread recognition of the mark in the wine industry or among

relevant wine purchasers. *Bose,* 293 F.3d at 1375.

Similarly, the Phelps' evidence presented to the TTAB and in this proceeding relates to nine

past awards and 90-100 articles[6] generally *referring to* (not about)[7] the wine. In actuality, these

accolades are not current nor numerous in relation to the 37-year existence of the mark, and

definitely not sufficient to satisfy Phelps' duty to demonstrate that INSIGNIA is a famous mark for

wine. *See Hard Rock Café,* 48 USPQ2d at 1407 (articles appearing periodically in newspapers and

periodicals throughout the United States over a 20 year period are not sufficient to prove a mark is

famous); *Duca di Salaparuta,* Opposition No. 91191848, at 7-9 (*casual* references in several

hundred articles over a 30 year period are not sufficient to show that CORVO is a famous mark for

wine"). [A. 264-265.]

As for advertising expenditures, Phelps failed to provide *any* evidence of advertising

expenditures or even competent evidence of direct advertising of its wine by which the TTAB could

_____

[6]Appellant claimed in its TTAB Brief that INSIGNIA has obtained notoriety because: it was selected as Wine Of The Year in *Wine Spectator Magazine* in 1998 [A. 64], 2002 [A. 62-63] and 2005; and, it has been served at the White House [A. 65-70.] The last award was over ten years ago – a particularly good vintage year. And while impressive, the wine is not famous because a particularly good 2005 vintage over ten years ago was served at the White House. The present and future consuming public is unlikely to have read or recall these old articles. Appellant has presented no evidence of recent awards or recognition of the wine.

[7]The TTAB stated "[i]n particular, Petitioner refers to 'newsworthy' newspaper articles in the October 13, 1993 issues of NY Times [A. 89] and San Jose Mercury News [A. 99] . . . . While Petitioner's INSIGNIA wine was mentioned in both articles, the articles were not about Petitioner's wine." [A. 7.]

assess its alleged fame. *See generally Duca di Salaparuta,* Opposition No. 91191848, at 8 (no evidence of sales expenditures or direct advertising of Corvo wine was introduced from which the Board could assess the public recognition of the mark). [A. 264.]

### 2) The TTAB Applied The Correct Likelihood Of Confusion Standard To This Case

In the alternative, the Appellant claims that the TTAB applied the wrong standard to this case: i) that it applied the "fame" standard for a dilution case under the Federal Trademark Dilution Act, rather than a "strength" analysis for the purposes of this likelihood of confusion case; and, ii) that the TTAB found only that INSIGNIA was not famous, rather than making a strength finding in relation to the INSIGNIA mark. [Appellant Br. p. 13-14.]

In its opinion, the TTAB found:

> *Fame for confusion purposes* arises as long as a significant portion of the relevant consuming public . . . recognizes the mark as a source indicator. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsatdin Maison Fondee En 1772*, 396 F3d 1369, 73 USPQ2d 1689, 1695 (Fed. Cir. 2005). Petitioner defines its customers as 'every type and class of consumer and end user that appreciates fine wine, or is capable of appreciating fine wine.' Thus, and considering that petitioner's identification of goods extends to all 'wine,' the relevant consuming public consists of those who purchase wine.

[A. 6 (emphasis added).] The TTAB, relying on *Palm Bay*, specifically noted that *"[f]ame for confusion purposes"* was the standard applied.

*Palm Bay* further states that "[w]hile dilution fame is an either/or proposition – fame either does or does not exist – likelihood of confusion fame 'varies along a spectrum from very strong to very weak.' *In re Coors Brewing Co.,* 343 F.3d 1340, 1344 (Fed. Cir., 2003)." *Palm Bay,* 396 F.3d at 1374-75. Contrary to Appellant's claim that the TTAB failed to make a strength finding under *Palm Bay* in relation to the INSIGNIA mark, the limited evidence submitted was insufficient to

demonstrate strength, it was only sufficient to show that the mark has had success in the marketplace.[8]

**B.    The TTAB Accurately Compared The Parties' Marks Under The First *DuPont* Factor And Its Findings Should Be Sustained**

In comparing the parties' marks under the first *DuPont* Factor, the TTAB properly considered the appearance, sound, connotation and commercial impression of the marks in their entireties. *Palm Bay*, 396 F.3d at 1373; *E.I. du Pont*, 476 F.2d at 1361, 177 USPQ at 567. [A. 8.] The TTAB further ruled that:

> While "the similarity or dissimilarity of the marks is determined based on the marks in their entireties … there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties." *In re National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

[A. 8.]

As recognized by the TTAB, Appellant's mark consists solely of the word, INSIGNIA while Appellee's mark is the phrase, ALEC BRADLEY STAR INSIGNIA, in standard character format. [A. 9.]

**1)    The TTAB Properly Considered The Appearance, Sound, Connotation and Commercial Impression Of The Marks In Their Entireties**

As viewed in its entirety, the TTAB found that Appellee's mark consists of its house mark, ALEC BRADLEY, and the unitary term STAR INSIGNIA. [A. 9.]

In relation to its finding as to the ALEC BRADLEY house mark, the court relied on *In re*

---

[8]The TTAB concluded that Phelps' INSIGNIA branded "wine *has met with success in the marketplace*, [but] we are not persuaded on this record that Petitioner's mark is a famous mark." [A. 8.]

*Fiesta Palms LLC*, 85 USPQ2d 1360, 1364 (TTAB 2007), and its cited authorities, concluding that:

> Generally, if the product marks are identical, the addition of the house mark does not
> avoid confusion, however, "where there are some recognizable differences in the
> asserted product marks … the addition of a house mark and/or other material to the
> assertedly conflicting product mark has been determined to render the marks as a
> whole sufficiently distinguishable." *Id.* In this case, since there are recognizable
> differences in the product marks, STAR INSIGNIA and INSIGNIA, the house mark
> ALEC BRADLEY does distinguish the marks. *See In re Avent, Inc.,* 195 USPQ 185,
> 187 (TTAB 1977) . . . .

[A. 9-10.]  In relation to the remainder of the mark, the TTAB found that the mark, STAR

INSIGNIA:

> . . . is a unitary phrase with the word "star" modifying "insignia." "Insignia" is
> defined as:
>
> > 1: a badge of authority or honor;
> >
> > 2: a distinguishing mark or sign.
>
> Thus, the commercial impression of Opposer's mark INSIGNIA is simply an
> "insignia" or mark, and the commercial impression of Applicant's mark ALEC
> BRADLEY STAR INSIGNIA is one of a star shaped mark or sign identifying the
> source of a product produced by ALEC BRADLEY.

[A. 10-11.]

Appellant generally alleges that the TTAB's recognition of the house mark ALEC

BRADLEY and STAR INSIGNIA as a unitary phrase was error.

This ruling was correct based upon the evidence presented.  Evidence was presented that

ALEC BRADLEY, through it holding company Fairmont, has over 100 marks registered with the

USPTO and is a recognized house mark in the tobacco industry. [A. 107, ¶5 and Appx. 111-113.]

The evidence further reveals that Fairmont always uses the ALEC BRADLEY® house mark, and

STAR with the word INSIGNIA, always in close proximity to the word INSIGNIA. [A. 109, ¶¶ 25,

37 and Appx. 114-115 and 116-154.]  Fairmont never uses INSIGNIA alone.  On the other hand,

Phelps always uses INSIGNIA alone, and never in combination with any words other than its house mark JOSEPH PHELPS.[9] The JOSEPH PHELPS house mark is clearly distinguishable from the ALEC BRADLEY® house mark. The house mark, ALEC BRADLEY®, makes it clear that the source of the goods is ALEC BRADLEY, not Appellant, Joseph Phelps.

Appellant further claims that the TTAB failed to recognize that: because the word INSIGNIA is larger than the other words in various stylistic uses of the mark, the commercial impression is that INSIGNIA is the dominant word of the mark; and, that the TTAB substituted its own view about the commercial impression created by the mark, ". . . rather than that of the relevant consumers as supported by the evidence". [Appellant Br. pp. 19-20.]

This position is at odds with the *competent evidence* presented in the case.[10] Appellant did not submit evidence of consumer impression through a survey, study, evidence of confusion, or otherwise. What is in evidence is the application, the specimen and the substantial introduction of evidence by both parties of the parties' use in commerce. The TTAB makes it clear in its opinion that it did review this evidence. [A. 3, 12-14.] The TTAB ruled that the fact that the word INSIGNIA is sometimes larger than the preceding word STAR is not at issue. "Because the depiction of the mark is in standard character format [the] Respondent is not limited to any particular

---

[9]Pursuant to all of the evidence introduced in the TTAB proceeding, the use of Phelps' INSIGNIA trademark in commerce always includes the words Joseph Phelps: on every product label since 1975 [A. 30-38]; in every Presidential Events Menu [A. 65-70]; on every Wine Spectator Award [A. 62-64] and every news article [A. 73-106.]

[10]Appellant acknowledges that " '[t]he commercial impression that a mark conveys must be viewed through the eyes of a consumer, *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1345 (Fed. Cir., 2001) noting that *competent evidence is necessary* to demonstrate the relevant purchasing public's understanding of a contested term'." [Appellant Br. p. 19.]

presentation." [A. 9.] "Registrations in standard character format are 'federal mark registrations that make no claim to any particular font style, color, or size of display and, thus, are not limited to any particular presentation.' *Citigroup Inc. v. Capital City Bank Group Inc.,* 637 F3d 1344, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011)." [A. 9, f. 11.] The Appellant can not now call foul because Appellant failed to provide the *competent evidence* necessary to convince the TTAB of its position on consumer commercial impression.

Then, for the first time, Appellant argues that the mismatch between Appellee's word mark drawing, and Appellee's design specimen in its application and use in commerce, where INSIGNIA is larger, would indicate an invalid registration under TMEP §807.03(a) and TMEP §807.12(a). [Appellant Br. p. 16.]

The "general rule" is that a federal appellate court should not consider an issue not passed upon below. *Singleton v. Wulff,* 428 U.S. 106, 120 (1976); *United States v. Ford Motor Co.,* 463 F.3d 1267, 1276-77 (Fed. Cir. 2006). Appellant never raised this issue in its Notice Of Opposition, or in any pleadings thereafter, including its TTAB initial brief and/or rebuttal brief. Therefore, this Court should deem this argument forfeited and waived by Appellant.

Nonetheless, a review of the cited TMEP rules indicates that Appellant's argument is misplaced.

TMEP §807.03(a) provides that you may not include a design element in a standard character drawing for a standard character, word-mark application. [A. 248-49.] Appellee does not include any design element in its standard character drawing. As indicated on the registration application at Appx. 173 and 185, the drawing is for the mark ALEC BRADLEY STAR INSIGNIA in standard characters, with no design element.

TMEP §807.12(a) provides that the drawing of a mark must substantially match the mark shown on the specimen. [A. 250.] As stated above and by the TTAB in its ruling, "Registrations in standard character format are 'federal mark registrations that make no claim to any particular font style, color, or size of display and, thus, are not limited to any particular presentation.' *Citigroup Inc. v. Capital City Bank Group Inc.,* 637 F3d 1344, 98 USPQ2d 1253, 1256 (Fed. Cir. 2011)." [A. 9, f. 11.] Therefore, the stylized use of the standard form mark in the specimen [A. 195-96], or in commerce, is not relevant. Further, as acknowledged by the Appellant, the adequacy of a trademark application specimen is not a ground for cancellation. *Century 21 Real Estate Corp. v. Century Life of America,* 10 USPQ2d 2034 (TTAB, 1989) . . . ."[11] Nor (as again acknowledged by Appellant) is this an action to determine common law rights.[12] This is an action to determine whether the TTAB correctly ruled in the cancellation proceeding on the likelihood of confusion pursuant to the *DuPont* factors.

### 2)    Appellant's Allegations Relating To Appellee's Earlier Filed Application Is Neither Pertinent To This Proceeding, Nor Convincing

Appellant suggests that, because Appellee initially filed its application for INSIGNIA alone, and the word INSIGNIA is sometimes larger than the other words in the use of the ALEC BRADLEY STAR INSIGNIA mark, Fairmont "intends to use INSIGNIA on cigars as its mark, as a design, with other word and design elements that disguise its real usage of INSIGNIA." [Appellant's Br. p. 18.]

Phelps' allegations of Fairmont's intent in relation to its earlier filing is not pertinent to this

---

[11][Appellant Br. p. 16.]

[12][Appellant Br. p. 15.]

proceeding.  Fairmont *did not* register INSIGNIA alone.  Fairmont registered, in standard character

format, and uses the entire mark ALEC BRADLEY STAR INSIGNIA.  In fact, as indicated in the

facts of this case, when Fairmont attempted to register INSIGNIA and STAR INSIGNIA, Joseph

Phelps' mark for wine was not cited as an impediment in either application.[13]  Instead, marks in class

034 for tobacco products and cigars were cited.  Recognizing the import of trademarks and

respecting the trademarks of its product peers, Fairmont voluntarily abandoned its applications for

INSIGNIA and STAR INSIGNIA, and then filed for ALEC BRADLEY STAR INSIGNIA.[14]  Once

the house mark ALEC BRADLEY® was included, the USPTO declined to cite even the other

tobacco related marks in international class 034 as an obstacle to registration.  Fairmont's actions

clearly demonstrate that it did not have any intent to create confusion or trade off the goodwill of any

third party, and particularly not the Phelps' trademark.

### 3)     No Finding On A "Scale Of Similarity" Was Necessary

Citing, *In re Coors Brewing Co.*, 343 F.3d 1340 (Fed. Cir., 2003), Appellant claims that "the

TTAB failed to consider degrees of similarity between the marks, finding only non-similarity."

[Appellant's Br. p. 20.]

The TTAB ruled that: "the marks, as viewed in their entireties, differ in appearance, sound,

connotation and commercial impression." [A. 11.] The TTAB did not find any degrees of similarity,

---

[13]Three Examining Attorneys reviewing Fairmont's applications for INSIGNIA (alone), STAR INSIGNIA and ALEC BRADLEY STAR INSIGNIA never found a likelihood of confusion pursuant to their review under TMEP §1207 by and between Phelps' mark for INSIGNIA in international class 033 for wine and Fairmont's mark in international class 034 for cigars and cigar related products, so as to cite the Phelps' mark as an obstacle to Fairmont's applications for INSIGNIA (alone), STAR INSIGNIA or ALEC BRADLEY STAR INSIGNIA. [A. 107-109 ¶¶ 7-21.]

[14]Refer to Statement Of Facts, *infra.* p. 2-4.

therefore, no finding on a "scale of similarity" was necessary.

**C.    The TTAB's Ruling That The Parties' Goods Are Not Similar Or Related In A Way That Would Create A Likelihood Of Confusion Under The Second _DuPont_ Factor Should Be Sustained**

In relation to this _DuPont_ factor, the nature and scope of a party's goods are generally determined on the basis of the goods recited in the application. TMEP §1207.01(a)(iii); _Hewlett-Packard Co. v. Packard Press, Inc._, 281 F.3d 1261, 1267 (Fed. Cir. 2002); _In re Shell Oil Co.,_ 992 F.2d 1204, 1207 (Fed. Cir. 1993). Obviously, the parties' goods in this case are not similar. Phelps owns a trademark for wines in international class 033. Fairmont owns a trademark for cigars, tobacco and cigar related products in international class 034.

Court's have found that even if the goods in question are different from, and thus not related to, one another in kind, the issue is whether the public will be confused about the products' source. _Hewlett-Packard_, 281 F.3d at 1267; _In re Shell Oil Co._, 992 F.2d at 1207. Likewise, in its opinion, the TTAB recognized that, when examining the similarity of the goods, ". . . likelihood of confusion can be found 'if the respective products are related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that they emanate from the same source.' _Coach Services Inc. v. Triumph Learning LLC_, 668 F3d 1356, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012)."

**1)    The Evidence Presented Did Not Support A Finding That The Parties' Goods Are Related In A Way That The Consuming Public Would Be Confused As To The Origin Of The Goods**

Appellant argues that the TTAB's ruling on this issue was wrong because the TTAB improperly combined relatedness of the goods and relatedness of the marks into a new "dual use" standard. However, Appellant does not introduce any evidence or argument that supports this

proposition. Instead, Appellant claims that even this higher "dual use" standard was met because: i) Fairmont uses INSIGNIA as part of its mark; and, ii) Phelps provided evidence of simultaneous distribution, sales and consumption of wine and cigars. [Appellant Br. p. 21.]

The fact that Fairmont uses INSIGNIA as part of its mark has already been discussed above.[15] The marks are not the same. The TTAB ruled that Appellee's mark consists of its house mark, ALEC BRADLEY and the unitary term STAR INSIGNIA, not INSIGNIA, alone.

Further, the TTAB did, in fact, review and consider Phelps' evidence of distribution, sales, advertisement and consumption of wine and cigars and *did find* that cigars and wine may be distributed, sold, advertised and consumed together. [A. 12-14.] The TTAB ruled that wine and cigars are used together, and are sold in the same channels of trade.[16] [A. 12.] However, it recognized that "used together" is not alone determinative to the entire underlying factual inquiry. [A. 14.] *See Shen,* 393 F.3d at 1244-45 (finding no correlation among goods because, aside from

---

[15]*Infra.* p. 16-17.

[16]Fairmont disagrees with the TTAB's finding that the "evidence suggests" that *these parties goods* are distributed or sold in the same established or likely to continue trade channels, or advertised together. [A. 12 and 15.] The actual evidence presented in this case reveals that Phelps' and Fairmont's goods are not distributed or sold in established or likely to continue trade channels, or advertised together. Pursuant to a binding contract with a third party licensee, ALEC BRADLEY STAR INSIGNIA goods are sold *exclusively* by a single licensee – New Global Marketing, Inc. – only on-line, only at www.Bestcigarprices.com, and no where else. [A. 109 ¶ 24.] ALEC BRADLEY STAR INSIGNIA goods are not advertised in Wine Spectator or any other wine magazines, or even any other cigar magazines where wine may be marketed. [A. 110 ¶ 41.] ALEC BRADLEY STAR INSIGNIA goods are advertised only on the sole distributor, www.Bestcigarprices.com, and in its customer cigar sales catalogue. [A. 110 ¶ 41.] The only way the consumer will ever be able to purchase the ALEC BRADLEY STAR INSIGNIA cigar products is by consciously going to this single website, that does NOT sell wine, and be actively seeking this cigar or ALEC BRADLEY® cigars. [*See generally* Appx. 253-259.] Thus, Fairmont requests that the TTAB's ruling on this factor (generally *DuPont* factor three) be reversed.

the fact that these goods are used together, there is no evidence that the consuming public would perceive them as originating from the same source).

> As the Federal Circuit observed, "used together" is not alone determinative, . . .: The test is not that the goods and services must be related if used together but merely that that finding is part of the underlying factual inquiry as to whether the goods and services at issue… can be related in the mind of the consuming public as to the origin of the goods. Thus, the mere fact that two goods are used together in the same setting or venue does not, in and of itself, demand a finding that confusion is likely.

> 4 McCarthy on Trademarks and Unfair Competition § 24:26 (4th ed.) (2015). *See Shen Mfg. Co. Inc. v. Ritz Hotel, Ltd.,* 393 F.3d 1238, 73 USPQ2d 1350, 1355 (Fed. Cir. 2004) . . . .

[A. 14.] So, in addition to its finding that the goods are used together, the TTAB reviewed the ways in which the products differ.  The TTAB found that ". . . the products differ in numerous ways, including the differences in the raw ingredients used to manufacture the products, the differences in the methods of manufacture and the negligible amount of evidence of use of the same mark on both cigars and wine. In light of these differences, *and the minimal evidence of [confusion regarding] a single source of both goods*[17], we are not persuaded by Petitioner's arguments that the goods are related." [A. 14-15 (emphasis added).]

---

[17]The TTAB, in its opinion, repeatedly stated that there was negligible evidence introduced by Phelps on the use of the same or similar marks on these types of goods.  In the limited argument presented in the Phelps' TTAB brief on this issue [A. 325-326], Phelps relied on *In re Vienna Sausage Mfg. Co.*, 230 USPQ 799 (TTAB 1986), *Polo Fashions, Inc. v. LaLoren*, 224 USPQ 509 (TTAB 1984), *John Walker & Sons Limited v. Tampa Cigar Company, Inc.*. 124 F.Supp. 254, 103 USPQ 21 (D.Fla. 1954), *aff'd* 222 F.2d 460, 105 USPQ 351 (CAS 1955) and *In re Licores Veracruz, S.A. de C.V.*, unpublished (TTAB 2012).  In general, these cases stand for the proposition that:  the goods of parties do not need to be identical if the goods are distributed, sold and used together or advertised in the same media.  None of these cases nor any Phelps' argument on this issue explored the likelihood of consumer confusion as to the source of the Phelps' INSIGNIA mark and Fairmont's ALEC BRADLEY STAR INSIGNIA mark.

### 2) No *Per Se* Rule Was Intended Or Asserted By The TTAB

The Appellant also claims that the TTAB erred by suggesting a *per se* rule that wine and cigars are not related products (Appellant Br. p 22), citing *In re Opus One, Inc.*, 60 USPQ2d 1812, 1814 (TTAB 2001).

In its ruling, the TTAB stated that *"[m]oreover,* the facts in this case *are similar to* the infringement case discussed by the TTAB in *In re Opus One Inc.*, 60 USPQ2d 1812, 1814 (TTAB 2001), wherein the TTAB concluded that with respect to the marks OPUS ONE for wine and OPUS X for cigars, the marks are not related and/or the goods are not related." [A. 15.] In footnote 13 to this finding, the TTAB understood and acknowledged the procedural nature of this statement when it described that:

> The Appeal involved Applicant's mark OPUS ONE for restaurant services and Registrant's mark OPUS ONE for wine. While finding likelihood of confusion, in its discussion of the sixth *du Pont* factor (the number and nature of similar marks in use on similar goods), the Board noted the 1998 dismissal of an infringement action by Opus One Winery against the use by Fuente of OPUS X for cigars. From this dismissal, the Board concluded that OPUS X and OPUS ONE are not similar marks and/or that cigars and wine are not similar goods.

Because of the limited evidence presented by Phelps on the issue, the TTAB felt comfortable partially basing its ruling on the reference in the case. No *per se* rule was announced or intended. In using the words "moreover" and "similar" in its ruling, the TTAB simply found that the reference in the Opus case was an additional factor considered in its ruling in a case where there was negligible evidence of use of the same mark on both cigars and wine. [A. 14.] Relying on Opus reference was just another factor in its entire analysis of the second *DuPont* factor in this fact specific case, and it is not a basis for overturning the TTAB's ruling on likelihood of confusion where the other factors are so compelling.

**D.    The TTAB Ruling Pursuant To The Eleventh *DuPont* Factor Regarding Appellant's Limited Policing Efforts Was Correct And Should Be Sustained**

In the TTAB opinion footnote 10, the TTAB stated:

> Petitioner also argues that it has acquired exclusive rights by policing its mark. The evidence introduced consists of cease and desist letters sent to three companies in 2006 and 2007; and follow-up letters regarding one of the companies. Petitioner's reference to four oppositions is not supported by any evidence and hence is not further considered. Petitioner's cease and desist and follow up letters only reflect limited policing efforts.

[A. 8.] Appellant claims that this finding was incorrect because the TTAB ignored Phelps' testimony related to four oppositions mentioned in the Phelps' Affidavit, and, the TTAB had a duty to investigate and consider these oppositions via its judicial notice authority (since the TTAB had access to the public records related to these oppositions at the USPTO website). [Appellant Br. p. 23-24.]

The TTAB did not include the four oppositions cited because there was no evidence to support the oppositions. The Appellant merely listed the oppositions in the Phelps' Affidavit. [A. 26.] The list only provided the name of the opposition, the opposition number and the year the opposition was filed. Nothing more. No USPTO records or other documents were presented by Appellant to substantiate the Phelps Affidavit statement. Further, judicial notice in a TTAB proceeding is discretionary. TBMP §712. The TTAB has no duty to investigate or confirm Appellant's claims. The TTAB's refusal to consider this unsubstantiated summary of the four oppositions is permissible.

Failing to submit satisfactory evidence as to the oppositions, Appellant attempts to rely on Fairmont's TTAB Brief arguments [A. 39] to prop up its lack of evidence. Even if this Court considers Fairmont's evidence related to the four oppositions, its finding will be the same. Fairmont's evidence presented to the TTAB in its Brief reveals that none of the oppositions were

fully litigated or resulted in any determination by the USPTO, TTAB or otherwise, that Appellant is, in fact, entitled by law to exclude others from using INSIGNIA on unrelated or even related goods.[18] [A. 39.]

On the other hand, Fairmont introduced evidence of two trademarks registered with the USPTO, and in use in commerce, bearing the marks COACH INSIGNIA[19] and BAHIA INSIGNIAS[20] being used on the very same goods as those at issue in this proceeding, namely, wine and cigars, respectively. These two marks are more similar in appearance, sound and commercial impression, and more likely to travel in the same trade channels in relation to Appellants's INSIGNIA mark than is Fairmont's distinctive ALEC BRADLEY STAR INSIGNIA mark for

---

[18]In Fairmont's TTAB Brief [A. 39, fn. 8], Fairmont noted that:

> In Opposition No. 91177073 against Mead Westvaco Packaging Systems, LLC for use of INSIGNIA on paper packing products in 2007, the Applicant Mead Westvaco Packaging Systems, LLC abandoned its application.

> In Opposition No. 91205206 against Smithtown Steakhouse LLC for an intent-to-use "I INSIGNIA PRIME STEAK: SUSHI" and design on restaurant and bar services in 2011, the opposition was withdrawn after the Applicant Smithtown Steakhouse LLC agreed to restricted use of its services mark to restaurant and bar services.

> In Opposition No. 92048450 / Cancellation No. 91179395 against CSC Brands for use of INSIGNIA on soup in 2007, the Applicant CSC Brands voluntarily surrendered its registration under Section 7 (e).

> In Opposition No. 91210337 against Tony Borhani for use of INSIGNIAS on cigars in 2013, the Applicant Tony Borhani failed to respond to the Opposition and a default judgment was entered.

[A. 39, fn. 8.]

[19][A. 301, ¶4, and Appx. 306-314.]

[20][A. 301, ¶5, Appx. 315-324 and Appx. 269-272.]

exclusively licensed, single source goods. Yet, neither of these two marks has ever been opposed or challenged by Appellant. Also of interest, is the fact that a search (in close proximity to the time of the TTAB ruling) of the USPTO TESS site at http://tmsearch.uspto.gov/bin/showfield for "live" trademarks bearing the word INSIGNIA on unrelated goods and services revealed that there are approximately 68 registrations or applications bearing the word INSIGNIA (alone or used in combination with other words) of record with the USPTO. [A. 273-300 (hard copy of the site search and representative copies of the trademarks cited).][21]

The TTAB correctly ruled that Appellant exercised limited policing efforts, particularly when it has selectively permitted more similar marks to exist and directly compete with Appellant (i.e. COACH INSIGNIA for wine and BAHIA INSIGNIAS for cigars).

**D.    The TTAB's Ruling On Likelihood Of Confusion Under The *DuPont* Factors Was Correct And Should Be Upheld**

Should this Court find it appropriate to re-assign any of the findings of facts or law (in relation to the *DuPont* factors argued above) in favor of the Appellant, Appellee respectfully requests that this Court review the entire record before the TTAB (certified at Appx. 18-20) to make a finding of the likelihood of confusion pursuant to *all* of the *DuPont* factors argued before the TTAB. Accordingly, Appellee adopts and reasserts each and every argument set forth in its TTAB brief (and its supporting evidence), in its entirety, in opposition to section VII. B. of Appellant's Brief. [Appellant Br. p. 24.] A full analysis of all relevant *DuPont* factors addressed before the TTAB clearly balances in favor of Appellee Fairmont.

---

[21]While third party applications have no evidentialry value other than to show applications were filed, this demonstrates that there have been far more than 16 third party applications for INSIGNIA filed in which Appellant did not oppose or send cease and desist letters or otherwise defend its mark over the years.

## IX.  CONCLUSION

Appellee presented compelling evidence and arguments before the TTAB demonstrating that there exists no likelihood of confusion by and between the Appellant Joseph Phelps Vineyard, LLC's INSIGNIA mark for wine in international class 033 and Appellee Fairmont Holdings, Inc.'s ALEC BRADLEY STAR INSIGNIA mark for cigars, tobacco, cigar boxes, cigar cutters or cigar tubes in international class 034 with respect to the in the *In re E.I. du Pont de Nemours & Co.*, 476 F.2d 1357 (CCPA 1973) factors. TTAB factual findings are reviewed with a deference mandated by the Administrative Procedure Act, 5 U.S.C. 706(2) and a court will reverse a ruling only when the record is not supported by competent evidence or the law. *Duopross*, 695 F.3d 1247. The TTAB thoroughly reviewed the evidence and law and properly found for Appellee.

Accordingly, Appellee Fairmont Holdings, Inc. respectfully urges this Court to affirm the Trademark Trial And Appeal Board ruling in Cancellation No. 92057240 denying Appellant Joseph Phelps Vineyards LLC's Petition For Cancellation of Fairmont's Registration No. 4213619.

Respectfully submitted,

Law Offices Of Kimberly Kolback
Attorney for Appellee
1395 Brickell Avenue, Suite 800
Miami, FL  33131
Telephone:  (305) 858-2627
Email:  kim@kkolbacklaw.com

By: /s/Kim Kolback/
KIMBERLY KOLBACK

              with

Miriam Richter
Miriam Richter, Attorney at Law, P.L.
2312 Wilton Drive, Suite 9
Wilton Manors, FL  33305
Telephone:  954-977-4711
Facsimile:  954-977-4717
Email:  mrichter@RichterTrademarks.com

By: /s/Miriam Richter/
MIRIAM RICHTER

## **CERTIFICATE OF FILING AND SERVICE**

I HEREBY CERTIFY that on this 8th day of January, 2016, the attached document was electronically served with the Clerk Of The Court for THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT using the CM/ECF System, with a copy served by U.S. mail and email to:

Counsel for Appellant
Thomas Schneck
Schneck & Schneck
P.O. Box 2-E
San Jose, CA 95109
tschneck@patentvalley.com

Respectfully submitted,

Counsel for Appellee
Kim Kolback
Law Offices Of Kimberly Kolback
1395 Brickell Avenue, Suite 800
Miami, FL 33131
Telephone: 305-858-2627
Email: kim@kkolbacklaw.com

By: /s/Kim Kolback/
KIMBERLY KOLBACK